## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REGINALD SPEARMAN.** | : | **CIVIL ACTION NO. 1:09-CV-2429** |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **DAVID A. VARANO, ATTORNEY** | : | |
| **GENERAL OF THE STATE OF** | : | |
| **PENNSYLVANIA- TOM CORBETT** | : | |
| | : | |
| Respondents | : | |

### MEMORANDUM

Petitioner Reginald Spearman ("petitioner"), a Pennsylvania state inmate, initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2005 Court of Common Pleas of Pike County convictions for burglary, aggravated assault and criminal trespass. (Doc. 1.) For the reasons that follow, the petition will be denied.

### I.    **Background & Procedural History**

In considering petitioner's direct appeal, the Superior Court of Pennsylvania sets forth the following facts of record in their July 14, 2006 opinion:

> On the night of December 31, 2003, Timothy Halliday and Samantha Gallagher held a party at their residence. Christopher and Michael Jahn, twin brothers who were home on leave from the United States Marine Corps, were both in attendance. N.T., 3/14/05, at 29-31. Appellant and Jennifer Spearman, brother and sister, were also present at the party. *Id.* at 31.
>
> Near midnight, a confrontation ensued among Appellant, Jennifer, Paul Grey, and other members of the party. N.T., 3/14/05, at 33, 74, 100. Appellant claimed someone had taken money from him. There was evidence presented that Paul Grey had pushed Samantha Gallagher,

prompting Christopher Jahn's involvement in the argument with Appellant. *Id.* at 34. Shortly thereafter, Samantha Gallagher, the hostess, asked Appellant and Paul Grey to leave. After allegedly pushing another female outside, Appellant was hit in the face by Christopher Jahn, knocking him into Grey's car. *Id.* at 35, 55, 57, 75. As Appellant and Grey were driving away from the residence, Timothy Halliday punched out the windshield of Grey's car. *Id.* at 75-76.

Some time later that same evening, Appellant, Jennifer, Paul Grey, and several unknown individuals returned to the residence. N.T., 3/14/05, at 37-38, 77, 116. They were told they were not allowed to enter the residence by "D.J.," a person not identified in the record. *Id.* at 76. The Jahns, Timothy Halliday, and Samantha Gallagher saw Appellant and Jennifer re-enter the house. They also saw Appellant carrying a large pipe. *Id.* at 37-38, 116. There was also evidence that Appellant encouraged or directed everyone to attack Christopher Jahn. *Id.* at 77. When Appellant held the pipe ready to strike Christopher Jahn, Michael Jahn grabbed Appellant and held him while Christopher took away the pipe and hid it. *Id.* at 37-38, 101, 116-117. The pipe was retrieved by the police and entered into evidence.

A large group of unidentified men had also entered the dwelling with the Spearmans and Grey. N.T., 3/14/05, 37-38. Evidence was presented that the men possessed bats, knives, and a gun. *Id.* at 39, 77, 118. A second confrontation ensued resulting in a violent brawl where both Michael and Christopher Jahn incurred wounds from unknown cutting instruments. *Id.* at 45. Both victims could not identify their assailant, and had not seen the cutting instrument or who had used it. *Id.* at 45. No witness claimed he or she saw Appellant or Jennifer with a weapon, after the pipe had been taken away from Appellant. *Id.* at 57-58, 66, 79, 119. While an unknown individual held down Christopher Jahn, Jennifer kicked Jahn while yelling at him for hitting Appellant, her brother. *Id.* at 43, 80. Michael Jahn received several stitches to repair the wounds to his neck and face. *Id.* at 121-122. Christopher Jahn received 32 stitches to repair the wounds to his back. *Id.* at 45.

(Doc. 1, at 1-3.)

The following procedural history was detailed in the Superior Court of Pennsylvania's September 28, 2009, opinion addressing the appeals of petitioner and his sister Jennifer Spearman:

> Appellants, brother and sister, were convicted of burglary, aggravated assault (2 counts) and criminal trespass following a joint jury trial. Appellants' convictions stemmed from an altercation that took place at a New Year's Eve party, whereat Christopher and Michael Jahn were stabbed following a fight between themselves, Appellants, and other individuals. Robert Bernathy, Esquire, represented Appellants jointly at trial. As a result of their convictions, Reginald was sentence to 10 to 25 years of incarceration, and Jennifer was sentenced to 8 to 25 years incarceration.
>
> Appellants appealed their judgments of sentence unsuccessfully to this Court, and, thereafter, unsuccessfully petitioned our Supreme Court for allowance of appeal. After the record was returned to the trial court, Appellants retained post-conviction counsel and filed timely PCRA petitions with the Pike County Court of Common Pleas. In the PCRA petitions, Appellants asserted, *inter alia*, that their judgments of sentence were constitutionally infirm because Attorney Bernathy labored under a conflict of interest due to his dual representation of Appellants. The PCRA court conducted a hearing on Appellants' petitioner, and, ultimately, denied the petitions.

(Doc. 2, at 28.) In his appeal of the PCRA court's decision, petitioner raised the following pertinent ineffective assistance of counsel claims:

> I. Did [Reginald] receive ineffective assistance due to trial counsel's dual representation of [Appellants], where:
>
> (A) Given the manifest differences in the Commonwealth's evidence against [Appellants], it was impossible for trial counsel to provide [Reginald] with unconflicted zealous representation;
>
> (B) Trial counsel's advice to [Jennifer] that she would have to "acknowledge what Reginald did" in order to receive a lenient pre-trial offer from the Commonwealth placed the interests of counsel's clients in irreconcilable conflict; and
>
> (C) Counsel's dual representation at sentencing placed counsel in a situation where he could not fervently advocate for leniency on behalf of [Jennifer], without highlighting [Reginald's] allegedly greater degree of culpability.

(Doc. 2, at 38.) The superior court concluded that all appellants' claims failed and affirmed the orders of the PCRA court. Petitioner filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied.[1] He filed the instant petition on December 10, 2009, seeking review of the above-listed ineffective assistance of counsel claims.

## II. Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Before a federal court can review the merits of a state prisoner's habeas petition, it must determine whether the petitioner has met the requirements of

---

[1] In their initial response, respondents sought dismissal of the petition based on the pendency of petitioner's petition for allowance of appeal which was pending in the Pennsylvania Supreme Court. (Doc. 11). However, on May 19, 2010, counsel for petitioner notified the court that the petition for allowance of appeal was denied on March 9, 2010. (Doc. 12, at 2.) Thereafter, respondents filed a response addressing the merits of petitioner's claims. (Doc. 14.)

exhaustion. Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). In the case at hand, it is undisputed that the issues raised by petitioner have been fully exhausted.

Once a court is satisfied that the exhaustion requirement has been met, and a merits review of a claim is warranted, as is the case here, section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits shall not be granted unless the decision is contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). AEDPA thus limits a federal court's authority to grant habeas relief when a state court has previously considered and rejected the federal claim on the merits.

The United States Court of Appeals for the Third Circuit recently set forth the following analyses applicable to the three legal inquiries:

> Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries. See, e.g., Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 785 (2011). The first is whether the state court decision was

"contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The second is whether the state court decision "involved an unreasonable application of" such law. § 2254(d)(1). And the third is whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. § 2254(d)(2).

The test for § 2254(d)(1)"s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 519, 520 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405, and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9 (2005).

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El

> v. Dretke, 545 U.S. 231, 240 (2005))); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, --- U.S. ---, 2011 WL 1225705, at *11 (Apr. 4, 2011).

Rountree v. Balicki, — F.3d —, No. 09-1189, 2011 WL 1815965, at * 5-6 (3d Cir. May 13, 2011). Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record, or is plainly controverted by the evidence, should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

Relief can only be granted if petitioner demonstrates that the state court's decision satisfies one of the three tests set forth above. The merits of the claims presented by petitioner will now be analyzed in accordance with these standards,

## III. Discussion

Petitioner asserts that "in three respects, trial counsel's dual representation of Petitioner and his codefendant sister created an unavoidable conflict of interest." (Doc. 2, at 25.) "First, given the manifest differences in the Commonwealth's

7

evidence against Petitioner and his sister, it was impossible for trial counsel to provide Reginald with unconflicted, zealous representation. Second, trial counsel's advice to Petitioner's sister, that she would have 'to acknowledge what Reginald did' in order to receive a lenient pre-trial offer from the Commonwealth, placed the interests of counsel's clients in irreconcilable conflict. Third, counsel's dual representation at sentencing placed counsel in a situation where he could not ardently advocate for leniency on behalf of Petitioner's sister, without highlighting Petitioner's alleged culpability." (Id.)

Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest.[2] See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). The ineffective assistance of counsel claims raised by petitioner are primarily governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for AEDPA purposes. Williams v. Taylor, 529 U.S. 362, 391(2000); Rainey v. Varner, 603 F.3d

---

[2]Multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. See Holloway v. Arkansas, 435 U.S. 475, 482 (1978). "Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel. Such a presumption would preclude multiple representation even in cases where " '[a] common defense . . . gives strength against a common attack.' " Id., at 482-483 (quoting Glasser v. United States, 315 U.S. 60, 92 (1942) (Frankfurter, J., dissenting)).

189, 197 (3d Cir. 2010). A habeas petitioner asserting a claim under <u>Strickland</u> must establish two elements. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" <u>Id.</u> at 689. Thus, counsel's performance will be deemed deficient only if it "fell below an objective standard of reasonableness." <u>Id.</u> at 688. The question ultimately is "whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u> at 690.

"Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. To establish prejudice, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

In certain contexts, prejudice is presumed. In finding that prejudice is presumed when counsel is burdened by an actual conflict of interest, the Supreme Court explained as follows:

> In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed. Rule Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for [other] Sixth Amendment claims. . . . Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

Strickland, 466 U.S. at 692 (quoting Cuyler, 446 U.S. at 350, 348.) A defendant who raised no objection at trial, as is the case here, must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). The possibility of conflict, such as "a mere theoretical division of loyalties," is insufficient to impugn a criminal conviction. Mickens v. Taylor, 535 U.S. 162, 172 n. 5 (2002); Cuyler, 466 U.S. at 348.

### A. Whether the State Court Decision was Contrary to the Applicable Standards Set Forth by the United States Supreme Court

Under the "contrary to" clause, we must determine whether the state court applied a rule that contradicts Strickland or was confronted with a set of facts materially indistinguishable from a decision of the United States Supreme Court but reached a different result. A state court need neither cite the decisions of the United States Supreme Court nor even be aware of its cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). In the matter *sub judice*, the Superior Court's recitation

of the Pennsylvania standard for ineffective assistance set forth below, is materially identical to the test enunciated in Strickland:

> The law presumes that counsel was not ineffective, and the appellant bears the burden of proving otherwise. To establish an ineffective assistance of counsel claim [. . . ] the appellant [must] satisfy a three prong[ed] inquiry: (1) whether the underlying claim is of arguable merit; (2) whether or not counsel's acts or omissions had any reasonable strategic basis designed to advance the interests of the appellant; and (3) whether there is a reasonable probability that the outcome of the proceedings would have been different, but for the errors and omissions of counsel. If the issue underlying the charge of ineffectiveness is not of arguable merit, counsel will not be deemed ineffective for failing to pursue a meritless issue. Also, if the prejudice prong of the ineffectiveness standard is not met, the claim may be dismissed on that basis alone and [there is no] need [to] determine whether the [arguable merit] and [reasonable basis] prongs have been met.

(Doc. 2, at 39-40, quoting Commonwealth v. Khall, 806 A.2d 415, 421-22 (Pa. Super. 2002 (citations and quotation marks omitted in original) ). Although the question of the merit of an underlying claim is not an explicit step under Strickland, the United States Court of Appeals for the Third Circuit has held that requiring a showing that the underlying claim has merit is not in conflict with Strickland. Rompilla v. Horn, 355 F.3d 233, 248 n. 9 (3d Cir. 2004), reversed on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005). Rather, it is considered a determinative factor in the "deficient performance" prong of the Strickland analysis. See Werts, 228 F.3d at 203-04; Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (counsel not ineffective for failing to raise meritless claims).

In considering whether a conflict of interest existed, the state court utilized the following standard:

> A conflict of interest born from an attorney's dual representation of two criminal clients may form the basis of an ineffective assistance of counsel claim. See Commonwealth v. Breaker, 456 Pa. 341, 318 A.2d 354 (1974). However, dual representation of criminal clients by a single attorney does not automatically constitute a conflict of interest. See Commonwealth v. Brown, 972 A.2d 529, 530 (Pa. Super. 2009). Rather, the petitioner proves an actual conflict of interest by demonstrating that a possibility of harm to his case arose as a result of the dual representation. Id., 972 A.2d at 530. A petitioner satisfies the requirement of demonstrating possible harm if he can show, *inter alia*, that he had a defense inconsistent with that advanced by the other client, or that counsel rejected his case in order to give the other client a more spirited defense. Breaker, at 345, 318 A.2d at 356.

(Doc. 2. at 40-41.)

Based upon the quoted text, it is clear that the state court did not apply a rule of law that contradicts the ineffectiveness standards set forth in Strickland or the conflict of interest principles laid out in Cuyler. Nor did the state court reach a contrary result after being confronted with facts materially indistinguishable from a United States Supreme Court case.

### B. Whether the State Court Determinations Involved an Unreasonable Application of Governing Supreme Court Precedent

The United States Supreme Court has recently stated that "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, — U.S. —, 131 S.Ct. 770 (2011). The Court further stated "that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal" and reiterated that even under de novo review,

12

the standard for judging counsel's representation is a most deferential one; the question is whether an attorney's representation amounted to incompetence under prevailing professional norms. Id. at 786, 788 (quoting Strickland, 466 U.S. at 690.)

In considering the conflict of interest issues, the superior court extracted the following background information from the record:

> Attorney Bernathy testified at the PCRA hearing that, from their initial meeting, Appellants were insistent that they both wanted to be represented by Attorney Bernathy and that they "had each other's backs." Attorney Bernathy formulated a defense strategy to achieve acquittal for both Appellants by discrediting the Commonwealth's case, as the majority of the Commonwealth's witnesses and the victims had *crimin falsi* convictions and other criminal involvement. While Attorney Bernathy stressed that it was up to Appellants whether to testify, he advised against both Appellants testifying due to the aforementioned strategy; they agreed with his strategy and did not testify at trial. Attorney Bernathy also testified that he discussed the utilization of character witnesses with Appellants but that he did not utilize character witnesses in this case because Appellants did not reveal any possible character witnesses to him until sentencing; additionally, he was concerned that Appellants' previous violent behavior would be revealed to the jury if he presented character witnesses at trial. Likewise, Attorney Bernathy also testified that there were plea negotiations between himself and the Commonwealth, but Appellants were unwilling to entertain any plea agreement that required them to inculpate themselves jointly or each other individually. Therefore, Attorney Bernathy did not recommend pleas for either Appellant.

(Doc. 2, at 41-42.) The PCRA testimony of Reginald and Jennifer Spearman was a blanket refutation of Attorney Bernathy's testimony. (Id. at 42.) For instance, petitioner testified that Attorney Bernathy glossed over possible conflicts in his dual representation and told him that a deal could be negotiated whereby Jennifer would testify against petitioner in exchange for probation, and Reginald would be incarcerated in the county jail. (Id.)

13

In reviewing the record, the superior court noted that the PCRA court clearly credited Attorney Bernathy's testimony and found the Spearmans' testimony not to be credible, and it was satisfied that the PCRA court's credibility determinations were supported by the record. (Id. at 43.)

1. Pre-trial Plea Negotiations

Petitioner argues that 'where an attorney finds himself discussing the possibility of a guilty plea with one of his clients if she admits the guilt of the other, a conflict of interest has clearly developed – a conflict requiring separate representation for each client by an attorney whose loyalty was undivided." (Doc. 2, at 29.) However, the superior court found that the arguments regarding the Commonwealth's plea negotiations were belied by the facts found by the trial court. Specifically, "Attorney Bernathy testified that he never had any conversation with Jennifer regarding whether she should implicate her brother to obtain a more favorable sentence; the Commonwealth, in fact, wanted admissions from both Appellants, which they refused to provide, and, as such, they proceeded to trial. Accordingly, this claim is without arguable merit and, therefore, fails." (Doc. 2, at 43.)

It is well settled that counsel is not ineffective for failing to raise baseless issues, Commonwealth v. Wilkerson, 490 Pa. 296, 416 A.2d 477, 479 (Pa. 1980), and all indications are that the state court utilized the correct governing federal principles and reasonably applied them to petitioner's case.

  2. <u>Differences in the Commonwealth's Evidence Against Reginald and Jennifer Spearman</u>

Petitioner argues that there were obvious differences between his and Jennifer's "alleged levels of involvement in the underlying incident," and that under such circumstances, there were arguments available to Jennifer that were not available to him. (Doc. 2, at 26.) "Yet, if counsel made these obvious arguments on Jennifer's behalf, he would have underlined the strengths of the Commonwealth's case against [petitioner]." (<u>Id</u>.) He takes the position that "the very existence of the conflict [arising from the evidence of differing levels of involvement of him and Jennifer Spearman] denied [him] his constitutional right to counsel." (Doc. 2, at 26-27.) In support, he cites to the United States Supreme Court case of <u>Halloway v. Arkansas</u>, 435 U.S. 475 (1978), for the principle that "a conflict of interest prevents counsel from arguing 'the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.'" <u>Halloway</u>, 435 U.S. at 489-490. (Doc. 2, at 26.) While the principle is accurately portrayed, it must be placed in context. <u>Halloway</u> addressed a trial court's duty to appoint separate counsel or to take adequate steps to ascertain the conflict of interest risk that accompanies joint representation and the burden it places on counsel. <u>Halloway</u>, 435 U.S. at 489-490. Despite defendants' objections to the joint representation and counsel's efforts to raise the issue of conflict with the court *via* motion, counsel was required to proceed with joint representation. (<u>Id.</u>)

15

Conversely, in the matter *sub judice*, the conduct of the trial court is not at issue. Moreover, petitioner did not object to the joint representation and counsel was adhering to the wishes of petitioner in representing both him and his sister. In many cases, a common defense gives strength against a common attack. Burger v. Kemp, 483 U.S. 776, 784 (1987).

The Superior Court addressed this issue in the following manner:

> The record indicates that Appellants were, at the outset of their representation, adamant that Attorney Bernathy represent them jointly. Upon his review of the record and the allegations against them, Attorney Bernathy concluded that the Commonwealth lacked sufficient evidence to meet their evidentiary burden against both Appellants, and he crafted his defense to undermine the Commonwealth's case against Appellants. As part of this decision, Attorney Bernathy advised Appellants not to testify on their own behalf, although he stressed to them that the decision to testify or not testify was their decision. . . . Further, we note that strategic choices by counsel made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and the strategic choices made after less complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. Commonwealth v. Jones, 636 A.2d 1184, 1190 (Pa. Super. 1994). Attorney Bernathy's advice to Appellants not to take the stand in their own defense was sound, inasmuch as they admitted to Attorney Bernathy before trial that they were present at the scene of the incident and that they both had participated in the incident that led to the charges being filed against them. Thus, had Appellants taken the stand in their own defense, they would have undermined their cases because they would have been forced to admit, to some degree, their participation in the incident. Accordingly Attorney Bernathy was not ineffective in advising Appellants not to testify. Jones, 636 A.2d at 1190. Likewise, Attorney Bernathy's decision not to present evidence of Jennifer's "limited involvement" was strategically sound, as the presentation of such evidence would have constituted a tacit admission of *some* participation by her (and by implication, Reginald, her brother) in the incident. As Attorney Bernathy's goal was an outright acquittal for both Appellants due to the weakness of the Commonwealth's proof of their involvement in the incident, the presentation of evidence demonstrating Jennifer's "limited involvement" would have frustrated

16

> this strategy. While Attorney Bernathy's strategy ultimately failed, this fact does not render his representation ineffective. See Commonwealth v. Easton, 488 A.2d 8, 10 (Pa. Super. 1985). Accordingly, this claim fails. Id., 636 A.2d at 1190.

(Doc. 2, at 43-45.) The above analysis clearly reflects that the state court utilized the correct principles (governing ineffective assistance of counsel and conflict of interest) and reasonably applied them to petitioner's case. Therefore, this claim will be denied.

### 3. Counsel's Joint Representation at Sentencing

Petitioner frames this issue as follows: "By arguing one client's relative innocence and saying very little on behalf of the other, counsel's advocacy on behalf of one client 'precluded zealous representation' of the other. Indeed, after making a heartfelt plea on behalf of Jennifer, counsel's brief remarks on Reginald's behalf were, at best, perfunctory. Indeed, trial counsel's sentencing presentation on Reginald's behalf comprises only two pages of the sentencing transcript." (Doc. 2, at 30.)

The superior court found the claim to be without merit. Specifically, the court noted that "[t]he transcript of Reginald's sentencing hearing (which took place immediately after Jennifer's sentencing hearing) indicates that Attorney Bernathy asked the trial court to consider the same pleas for leniency he made on Jennifer's behalf, albeit with the recognition that Reginald, unlike Jennifer, had a previous simple assault conviction. Accordingly, Attorney Bernathy's dual representation of Appellants did not result in any arguments that favored Jennifer

17

over Reginald at their sequential sentencing hearings. Accordingly Reginald's argument fails." (Doc. 2, at 46.) As noted above, although the question of the merit of an underlying claim is not an explicit step under Strickland, requiring a showing that the underlying claim has merit is considered a determinative factor in the "deficient performance" prong of the Strickland analysis. It is clear that the state court utilized the correct governing federal precedent and legal principles and reasonably applied them to petitioner's case.

### C. Whether the State Court Decision was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented to the State Court

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record evidence at the time of the state court's adjudication. Cullen, --- U.S. ---, 2011 WL 1225705, at *11. Petitioner has failed to proffer clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's findings. Accordingly, he is not entitled to relief on this ground.

## IV. Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be denied.

Notably, pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the

applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003)). Here, jurists of reason would not find the disposition of this case debatable. However, petitioner is advised that he has the right for thirty (30) days to appeal our order denying his petition, see 28 U.S.C. § 2253(a); FED. R.APP. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks, and obtains, a certificate of appealability from the court of appeals. See FED. R.APP. P. 22.

    An appropriate Order will issue.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge

Dated:       July 12, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REGINALD SPEARMAN.** | : | CIVIL ACTION NO. 1:09-CV-2429 |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **DAVID A. VARANO, ATTORNEY** | : | |
| **GENERAL OF THE STATE OF** | : | |
| **PENNSYLVANIA- TOM CORBETT** | : | |
| | : | |
| Respondents | : | |

## ORDER

AND NOW, this 12th day of July, 2011, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED based upon petitioner's failure to demonstrate that the applicable state court decisions were either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

2. There is no basis for the issuance of a certificate of appealabilty. See 28 U.S.C. § 2253(c).

3. The Clerk of Court is directed to CLOSE this case.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge